UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KATHY L. ALLAIRE,

Plaintiff,

v.

JO ANNE BARNHART, Commissioner of Social Security,

Defendant.

**Hon. Hugh B. Scott**

05CV892A

**Report and Recommendation**

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 10[1] (defendant), 12[2] (plaintiff)).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

The plaintiff, Kathy L. Allaire ("Allaire" or "plaintiff"), filed an application for disability insurance benefits on June 29, 2002. That application was denied initially and on reconsideration. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who

[1] In support of this motion, defendant filed a memorandum of law, Docket No. 11, and reply memorandum, Docket No. 13.

[2] In support of this motion, plaintiff filed her memorandum of law, Docket No. 12.

considered the case de novo and concluded, in a written decision dated February 14, 2005, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on March 3, 2005, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on December 22, 2005 (Docket No. 1). The parties moved for judgment on the pleadings. The motions were submitted on October 30, 2006 (Docket No. 15).

## FACTUAL BACKGROUND[3]

Plaintiff, proceeding in forma pauperis (see Docket Nos. 2, 3) and appearing through the Erie County Department of Social Services' counsel, is a woman born in 1954 with a high school education. She has not had substantial gainful employment since 1989.

## MEDICAL AND VOCATIONAL EVIDENCE

Plaintiff claims disabilities from rheumatoid arthritis and hepatitis C.

Administrative Law Judge William Pietz found that plaintiff's claimed arthritis in the lumbar spine was severe under Social Security regulations, see 20 C.F.R. § 416.920(c), but that impairment did not meet the level of the listed impairments in those regulations (R. 21, 17). He found that plaintiff's allegations about her limitations were not entirely credible due to plaintiff's history of substance abuse (R. 22, 18). Dr. David Thomas, plaintiff's primary treating physician, treated her arthritis and hepatitis (Docket No. 12, Pl. Memo. of Law at 3). The ALJ was not persuaded by Dr. Thomas because the opinions of plaintiff's treating sources were based upon

---

[3] References noted as "(R.__)" are to the certified record of the administrative proceedings.

her subjective complaints and not on objective findings and Dr. Thomas' findings regarding mental impairments were beyond his area of expertise (R. 19, 18). Only Dr. Thomas and a social worker concluded that plaintiff could not work, and the ALJ discounted the social worker as an acceptable medical source to access plaintiff's physical condition (R. 18). While Dr. Thomas found plaintiff had a limited range of motion in her back, Social Security evaluating physicians found that she had a full range of motion (R. 18) and in a subsequent medical report for determination of disability for Erie County Social Services, he did not indicate the abnormal rheumatoid factor in finding that plaintiff had arthritis. Further, Dr. Thomas is not a specialist (see Docket No. 13, Def. Reply Memo. of Law at 2 (Dr. Thomas is a family practitioner and not a mental health specialist), R. 304) and plaintiff delayed seeing a rheumatologist, Dr. Saldana, until only weeks before the disability hearing (R. 18). The ALJ concluded that Dr. Thomas' residual functional capacity finding (that plaintiff could not perform more than sedentary work) was not well supported by evidence and was given less evidentiary weight (R. 18).

ALJ Pietz found that plaintiff's residual functional capacity was that she could lift twenty pounds occasionally and stand or walk for up to six hours a day. "She is able to understand, remember and carry out at least simple instructions. She should avoid more than occasional fine fingering. She can occasionally deal with supervisors and co-workers but not with the public. A limitation to simple instruction does not significantly erode the occupational base." (R. 20.) Using the relevant Medical-Vocational Guidelines within the Social Security regulations for a person of plaintiff's age, education, and employment experience, as a framework to determine the level of exertion plaintiff could withstand in her present condition, the ALJ found that plaintiff could perform light work (R 19-20, 21). Vocational expert Peter Manzi testified that

plaintiff could work as a messenger, counter clerk, or laundry sorter, each occupation with jobs nationally and in this region (R. 21). Hence, the ALJ concluded that plaintiff was not disabled (R. 20, 22).

**DISCUSSION**

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that her impairment prevents her from returning to her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

> (1) whether the plaintiff is currently working;
>
> (2) whether the plaintiff suffers from a severe impairment;
>
> (3) whether the impairment is listed in Appendix 1 of the relevant regulations;
>
> (4) whether the impairment prevents the plaintiff from continuing her past relevant work; and
>
> (5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing her past work, the ALJ is required to review the plaintiff's residual functional

capacity and the physical and mental demands of the work she has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to her past relevant work given her residual functional capacity. Washington, supra, 37 F.3d at 1442.

*Application*

I. Disregard of Treating Physician's Findings

In the instant case, plaintiff argues that defendant Commissioner's denial of her disability on or before June 29, 2002, was not based upon substantial evidence. She also contends that an erroneous legal standard was applied by defendant, namely failing to give controlling weight to the opinion of Dr. Thomas, her treating physician (Docket No. 12, Pl. Memo. at 8-11). Plaintiff rejects the reasons the ALJ used to discount Dr. Thomas' findings. First, as to Dr. Thomas' opinion regarding plaintiff's fatigue or depression, plaintiff points out that defendant's consultative examiner, Dr. Rachel Hill, Ph.D., also noted that plaintiff had adjustment disorder with depression (R. 169). Second, as to the ALJ's argument that Dr. Thomas' findings were not supported by objective evidence, plaintiff points to the October 2004 findings being supported by 27 pages of progress and treatment notes (R. 205-36), including an ultrasound of her liver to support the diagnosis of hepatitis C (R. 235) and x-rays of her back for lumbar arthritis (R. 230).

Defendant responds that the ALJ appropriately discounted Dr. Thomas' opinion as to plaintiff's mental condition, since Dr. Thomas was not a specialist in that area. When asked for supporting information, in October 2004, Dr. Thomas left blank requests in an assessment form to support his findings (Docket No. 13, Def. Reply Memo. at 3). It is alleged that Dr. Thomas' restrictive assessments were not supported by his own reports or other medical evidence. Plaintiff had long stretches of time when she did not see Dr. Thomas (id.). Consultative physician Dr. Christine Holland found in 2002 that plaintiff was only mildly impaired in her ability to stand for long periods of time or to lift heavy items (id. at 4), hence the residual functional capacity for limited lifting (twenty pounds) and duration for standing (six hours per day). The Commissioner points to plaintiff's daily activities as proof of the lack of a disability (id. at 5).

Plaintiff claims that Dr. Thomas treated her for ten years (R. 240) and there is sufficient objective evidence in the medical record from Dr. Thomas to support his opinions and to give them controlling weight. The ALJ erred in disregarding Dr. Thomas' opinions based upon the ALJ's belief that Dr. Thomas overstepped his expertise in opining on plaintiff's possible depression.

II. Medical Vocational Guidelines

Plaintiff also contends the ALJ erred in using the Medical Vocational Guidelines when the ALJ previously found that plaintiff had a severe condition (her arthritis in the lumbar spine) (Docket No. 12, Pl. Memo. at 12). Plaintiff's mental residual functional capacity assessment listed eight moderate non-exertional limitations for her, such as accepting instructions from supervisors, getting along with co-workers, carrying out detailed instructions (R. 177, 178;

Docket No. 12, Pl. Memo. at 12). The ALJ factored these in describing plaintiff's residual functional capacity by limiting her contacts with co-workers, supervisors and the outside world (R. 20). Defendant argues in reply that the ALJ only used the Medical Vocational Guidelines as a framework for his decision and not to direct the finding that plaintiff was not disabled (Docket No. 13, Def. Reply Memo. at 6-7). Defendant also points out that the ALJ relied upon the vocational expert's opinion in finding that plaintiff could perform certain occupations (id. at 7). To support the ALJ's findings, the Court must now turn to the vocational expert's opinion rather than reliance upon the Medical Vocational Guidelines.

III. Vocational Expert's Opinion

Plaintiff also objects to the vocational expert's opinion that she could work as a counter clerk, messenger, or laundry sorter, because the ALJ's findings stated that she could perform light work but not any job dealing with the public and each of these jobs has contact with the public (Docket No. 12, Pl. Memo. at 12, 13). Defendant counters that the Dictionary of Occupational Titles ("DOT") definitions for messenger and laundry sorter do not require significant interaction with the public (Docket No. 13, Def. Reply Memo. at 7-8, Exs. A, B (copies of relevant DOT sections)), with defendant relying upon these two titles rather than the more generic counter clerk since the vocational expert was not more specific in describing the latter job (id. at 7 n.1).

The ALJ posed a hypothetical claimant to vocational expert Manzi of a 50 year old person with a twelfth grade education who could perform light work with the following restrictions: "no fine finger manipulation but normal grasping, that's both hands, simple instructions, no dealing with the public, occasional dealing with supervisors and co-workers"

(R. 322). Manzi confirmed that the hypothetical included no dealing with the public (R. 323), and the ALJ distinguished between no contact and occasional contact with the public if it was an issue in Manzi's opinion (id.). Manzi tried to find jobs weighing the amount of fine fingering and amount of contact with the public involved and he could not find a light, unskilled job with or without contact with the public that did not have any fingering (id.), then found the job of messenger as the only occupation that fits the hypothetical criteria and did not require fingering (id. R. 323-24). With the hypothetical changed to allow for occasional fingering, Manzi identified additional occupations (R. 324-25), such as counter clerk and laundry sorter. The focus of Manzi's opinion (and plaintiff's cross-examination) were on the physical aspects of the suggested occupations and not the requisite contact with the public (see R. 325-26). Manzi then identified an additional occupation as ticket taker that the hypothetical claimant could perform (R. 326-27), but again did not factor in the public contact involved with that position, cf. Dictionary of Occupational Titles, 344.667-010 (usher or ticket taker with significant contact with the public). The ALJ's findings did not add ticket taker as a possible occupation.

Although the vocational expert did not focus upon the amount of public contact the hypothetical claimant would have in the suggested occupations of messenger and counter clerk, the DOT definitions for those occupations consider worker interaction with the public to be "not significant" (Docket No. 13, Def. Reply Memo. Exs. A, B). Thus, the ALJ appropriately relied upon the vocational expert's opinion.

IV. In Sum

The ALJ failed to give sufficient weight to plaintiff's treating physician Dr. Thomas' opinions and this matter should be remanded for further proceedings on this basis. Had a proper

analysis of plaintiff's medical condition been conducted, the ALJ would have relied upon the vocational expert's opinion as to the occupations available to a hypothetical claimant truly similar to plaintiff. The ALJ should only rely upon the Medical Vocational Guidelines here as a framework rather than as nearly dispositive of plaintiff's disability claim.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **REVERSED** and this matter be **REMANDED** for further administrative proceedings. Defendant's motion for judgment on the pleadings (Docket No. 10) should be **denied** and plaintiff's motion for similar relief in her favor (Docket No. 12) should be **granted**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation *must* be filed with the Clerk of this Court *within ten (10) days* after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a). Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the recommendations contained herein.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

/s/ Hugh B. Scott

Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
January 22, 2007